UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WISCONSIN

---

In re:                                          Case Number: 13-15635-7

     MAJORIE ELLEN GIBSON,

               Debtor.

---

     THOMAS KRIESCHER, VICKY
     KRIESCHER, and MARJAC, INC.,

               Plaintiffs,

                               Adversary Number: 14-34

        v.

     MAJORIE ELLEN GIBSON,

               Defendant.

---

## **DECISION**

This matter is before the Court on the Motion of Vicky M. Kriescher, Thomas A. Kriescher, and Marjac, Inc. (the "Plaintiffs") for Summary Judgment (the "Motion"). The Motion seeks determination of nondischargeability of various claims under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and/or 523(a)(6)[1].

For the reasons set forth below, summary judgment is granted with respect to the claim under section 523(a)(4) for the acts resulting in damages in the amount of $200,487.00. This claim satisfies both the embezzlement and

---

[1] Both the introduction to the adversary complaint and the Motion reference 11 U.S.C. § 523(a)(2)(B). However, the complaint does not contain a count under that subsection, nor do the Plaintiffs identify a statement in writing satisfying its requirements. Therefore, this decision does not address such section as a basis for nondischargeability.

defalcation in a fiduciary capacity exceptions to discharge contained within section 523(a)(4). Summary judgment on the remaining claims is denied.

## I.    Jurisdiction

The Court has jurisdiction to resolve this matter under 28 U.S.C. § 1334. It is a core proceeding under 28 U.S.C. § 157(b)(2)(1).

## II.    Background

Marjorie Ellen Gibson (the "Debtor" or "Defendant") filed a voluntary Chapter 7 bankruptcy on November 20, 2013. The Plaintiffs had filed a complaint against the Defendant and two entities owned by her — J&M and Marjohn — in Minnesota state court in 2012. In the state court action, the Plaintiffs alleged that Marjac, J&M, and Marjohn were alter egos of the Defendant and that the Defendant tortiously interfered with a Buy/Sell Agreement, committed fraud and misrepresentation, breached fiduciary duties and duties of loyalty, and committed fraud in a fiduciary capacity. The Defendant appeared at trial on September 30 and October 1, 2013, but failed to appear on October 2, 2013. The state court then entered a default judgment in favor of the Plaintiffs on October 3, 2013 (the "Judgment"). The Plaintiffs are creditors as a result of the Judgment.

The Judgment included findings of fact that the Plaintiffs owned two FedEx routes, and to continue as FedEx contractors they were required to have at least three routes. The Plaintiffs entered into discussions with the Defendant about combining their respective FedEx routes in a new company to satisfy the

new requirements for number of routes. The Defendant represented she owned

three routes and that all three had been paid for in full. In fact, the Defendant

was still paying the purchase price of one of the three routes.

Based on the representations of the Defendant, the Plaintiffs entered into

an agreement to form a company, Marjac, Inc. ("Marjac" or "Company"), in

which the Plaintiffs would each own a twenty percent interest and the

Defendant would own a fifty-seven percent interest.[2] The revenue from two

routes was to be paid to the Plaintiffs and from the remaining three routes to

the Defendant. The Defendant was selected to act as the CEO and

Secretary/Treasurer of Marjac. The Plaintiffs were each Vice Presidents of

Marjac.

In approximately March 2011, Marjac ceased distributions to the

Plaintiffs. The Defendant commingled Marjac funds with the funds of her other

companies. She began retaining earnings, taking a salary, and used Company

funds to make payments on the third route and for expenses of her other

companies. Such payments were not contemplated or agreed when Marjac was

formed.

The parties had also entered into a Buy/Sell Agreement which provided

that upon the termination of Thomas Kriescher's employment by the Company,

the Company would repurchase his shares. Despite the cessation of his

---

[2] The state court does not address the ownership of the remaining three
percent. However, such discrepancy is not material to the facts or decision before this
Court.

employment in May 2011, the Company did not repurchase his shares. He

continued to be a shareholder and officer.

The Judgment contained the following awards:

| Claim | Damages |
|---|---|
| Tortious interference with Buy/Sell Agreement | $  80,000.00 |
| Fraud and misrepresentation regarding assets Gibson was contributing | $  20,000.00 |
| Conversion and breach of fiduciary duties and loyalty (retention of Company revenue) | $200,487.00 |
| Statutory attorney fees | $  55,702.00 |
| Appraiser to have been paid from Company funds | $    2,400.00 |
| Sanction attorney fees | $    4,201.25 |
| Failure to timely provide information to appraiser | $    1,750.00 |

The Judgment also concluded the refusal to purchase Plaintiffs' shares

pursuant to the Buy/Sell Agreement and the retention of the earnings and

value were the result of fraud while acting in a fiduciary capacity.

The Plaintiffs commenced this adversary proceeding by filing a complaint

on February 21, 2014 (the "Complaint"). In the Complaint, the Plaintiffs assert

the damages for misrepresentation of assets, retention and use of profits, and

tortious interference by exercising control over the Company are

nondischargeable under 11 U.S.C. § 523(a)(2)(A).[3] The Complaint asserts the

claims for retention and use of corporate funds are also nondischargeable as

---

[3] Count One of the Complaint.

4

embezzlement or as fraud in a fiduciary capacity under 11 U.S.C. § 523(a)(4).[4]

The Complaint asserts the retention and use of corporate property was a

conversion that is nondischargeable under 11 U.S.C. § 523(a)(6).[5] Finally, the

Complaint asserts the attorneys' fees and certain costs awarded in the

Judgment as sanctions are nondischargeable under 11 U.S.C. § 523(a)(6).

The Plaintiffs contend the Judgment supports the application of

collateral estoppel and bars the Debtor from contesting dischargeability.

## III.   Applicable Standards

Summary judgment is proper "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a), applied through Fed. R. Bankr. P.

7056. When faced with a motion for summary judgment, the court's role is to

determine whether there is a genuine issue for trial, not to weigh the evidence

to determine the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106

S. Ct. 2505, 2510-11, 91 L. Ed. 2d 202 (1986).

"[T]he burden is on the moving party to establish that there is no genuine

issue about any material fact, or that there is an absence of evidence to

support the nonmoving party's case, and that the moving party is entitled to

judgment as a matter of law." 20 CHARLES ALAN WRIGHT, ARTHUR R. MILLER &

MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 105 (3d ed. 1998) (citing

---

[4] Counts Two and Three, respectively, of the Complaint.

[5] Count Four of the Complaint.

5

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265

(1986)). The party seeking to establish an exception to discharge also bears the

burden of proof based on a preponderance of the evidence. *Grogan v. Garner*,

498 U.S. 279, 291, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991). Exceptions to

discharge are to be construed strictly against the creditor and liberally in favor

of the debtor. *Shaw Steel, Inc. v. Morris (In re Morris)*, 223 F.3d 548, 552 (7th

Cir. 2000). Thus, the Court must view all facts and indulge all inferences in the

light most favorable to the Debtor.

**IV.    Discussion**

    A.    <u>Issue Preclusion</u>

Federal courts are required to give state court judgments the same

preclusive effect that the judgments otherwise have in state court. *See Dollie's

Playhouse, Inc. v. Nable Excavating, Inc. (In re Dollie's Playhouse, Inc.)*, 481 F.3d

998, 1000 (7th Cir. 2007). If an issue was previously litigated under state law,

the law on collateral estoppel of the state where the judgment was rendered

applies. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481-82, 102 S. Ct.

1883, 72 L. Ed. 2d 262 (1982); *Adams v. Adams*, 738 F.3d 861, 865 (7th Cir.

2013). The prior litigation between the parties took place in Minnesota state

court, and therefore Minnesota law on collateral estoppel applies.

Under Minnesota law, collateral estoppel is available when: (1) the issues

are identical to those in a prior adjudication, (2) there was a final judgment on

the merits, (3) the estopped party was a party or in privity with a party in the

previous action, and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issues. *Ellis v. Minneapolis Comm'n on Civil Rights*, 319 N.W.2d 702, 704 (Minn. 1982). Collateral estoppel prevents a party from relitigating issues essential to a court's decision in a previous action. *See Anderson v. Mikel Drilling Co.*, 257 Minn. 487, 491, 102 N.W.2d 293, 297 (1960). It does not, however, apply to issues incidentally decided. For example, it does not apply when the court makes findings of fact but the judgment does not depend on those facts. *Id.* at 297 and n.8 (citing *Restatement (First) of Judgments* § 68 cmt. o (1942)).

Consequently, the question on summary judgment in this adversary proceeding is whether the Plaintiffs can satisfy all four collateral estoppel elements with respect to any of the claims for nondischargeability. The facts on which the Judgment necessarily depended must demonstrate that the issues decided in the state court proceeding were identical to the elements of the section 523(a)(2)(A), 523(a)(4), or 523(a)(6) exception they seek to prove. Admissions from the Defendant's answer to the adversary complaint may be added to prove elements of one or more section 523 exceptions.

The parties in the two proceedings are the same, satisfying the third element for collateral estoppel. Additionally, the Judgment is a final judgment. It was not appealed. Thus, the second requirement for collateral estoppel is satisfied.

The fourth element is also satisfied in this case. Under Minnesota law, "a default judgment is not only *res judicata* to another action on the same claim but collateral estoppel as to those issues pleaded in the complaint." *Roberts v. Flanagan*, 410 N.W.2d 884, 886-87 (Minn. Ct. App. 1987). The default judgment stands "as a final determination of the facts essential to its existence." *Herreid v. Deaver*, 193 Minn. 618, 622, 259 N.W. 189, 191 (1935). This is the case even if the Defendant did not interpose a defense in the action. *North Tel, Inc. v. Brandl (In re Brandl)*, 179 B.R. 620, 626 (Bankr. D. Minn. 1995). The Defendant here is bound by the findings essential to the Judgment. She had a full and fair opportunity to be heard under Minnesota law. In fact, unlike the defendant in *In re Brandl* who did not timely serve an answer, the Defendant here answered and actually participated in the state court litigation through a portion of the trial.

The remaining element for collateral estoppel is whether the state court decided issues essential to its Judgment that would lead to a finding of nondischargeability under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), or 523(a)(6). *See Beard Research, Inc. v. Kates (In re Kates)*, 485 B.R. 86, 102 (Bankr. E.D. Pa. 2012). When a party in a nondischargeability action presents the bankruptcy court with the first court's findings of fact and conclusions of law, the bankruptcy court generally can take an "inductive" approach. This approach aggregates the facts entitled to preclusive effect and determines whether they establish all of the elements of a 523(a) claim.

Alternatively, in situations where the first proceeding did not result in express findings of fact, the bankruptcy court may take a "deductive" approach. This approach starts with the state court's conclusions and works backward to reconstruct the necessary foundations for these conclusions. If the bankruptcy court is able to determine that the state court necessarily litigated and decided issues, it then compares them to the issues in the bankruptcy proceeding. If the issues are identical, collateral estoppel applies to prevent relitigation of these issues.

The acts constituting fraud, breach of fiduciary duty, and tortious interference with contract were separate events in this case.[6] Because the Judgment represents debts that arose through different transactions at separate times, bundling together all facts entitled to preclusive effect over a span of three years will not render all of the Judgment debt nondischargeable. Instead, facts essential to each component of the Judgment must satisfy the elements of a discharge exception. One illustrative reason for this is that the discharge exceptions the Plaintiffs rely on require an inquiry into the Defendant's state of mind. *See McClellan v. Cantrell*, 217 F.3d 890, 894 (7th Cir. 2000) (section 523(a)(2)(A) confines nondischargeability to actual fraud, "when the debtor is guilty of intent to defraud"); *In re Weber*, 892 F.2d 534, 538

---

[6] The acts constituting the state law fraud or misrepresentation claims occurred in or about September 2010, when the Defendant made misrepresentations as the parties were forming the Company. The acts constituting tortious interference occurred in approximately May 2011, when the Defendant refused to allow the Company to purchase the Plaintiffs' shares. The acts alleged to be breach of fiduciary duty or conversion took place from 2011 to September 2013.

(7th Cir. 1989) (embezzlement pursuant to section 523(a)(4) requires

"fraudulent intent or deceit"); *Bullock v. BankChampaign, N.A.*, __ U.S. __, 133

S. Ct. 1754, 1757, 185 L. Ed. 2d 922 (2013) (defalcation under section

523(a)(4) requires "a culpable state of mind"); *Jendusa-Nicolai v. Larsen*, 677

F.3d 320, 322-23 (7th Cir. 2012) (section 523(a)(6) requires injurer *desire* to

inflict injury or *know* it was highly likely to result). The Defendant took a

number of actions leading up to the Judgment, and her mental state may have

varied over time.

    B.   <u>Analysis and Contested Facts</u>

    Certain debts may be determined nondischargeable under section 523 of

the Code. The Plaintiffs assert that the debts owed to them by the Defendant

are nondischargeable under three categories contained in section 523. The

Court will address each assertion of nondischargeability separately.

    1.   <u>Section 523(a)(2)(A)</u>

    Section 523(a)(2)(A) excepts from discharge debt for "for money, property,

services, or an extension, renewal, or refinancing of credit, to the extent

obtained by . . . false pretenses, a false representation, or actual fraud, other

than a statement respecting the debtor's or an insider's financial condition

. . . ." Under the Bankruptcy Code, "the false representation necessary to

render a debt nondischargeable in bankruptcy is fraud which involves moral

turpitude or intentional wrong; 'actual fraud,' within the meaning of Section

523(a)(2), connotes deceit, artifice, trick or design, involving direct or active

operation of the mind." *North Cent. Wood Mktg. Corp. v. Carothers (In re Carothers)*, 22 B.R. 114, 120 (Bankr. D. Minn. 1982); see 4 COLLIER ON BANKRUPTCY 523.08 [1][d] at 523-44 to 523-45 (16th ed. 2013). To make out a case under section 523(a)(2)(A), a plaintiff can show false representations or false pretenses, or actual fraud. The elements are similar, and although "actual fraud" often involves a misrepresentation, it need not. *See McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000). Here, though, the facts involve a representation by the Defendant regarding the assets she was contributing.

To satisfy section 523(a)(2)(A), the Plaintiffs must establish the following elements: (1) the Defendant made a false representation of fact, (2) she either knew the representation to be false or made it with reckless disregard for its truth, (3) the Defendant intended to deceive, and (4) the Plaintiffs justifiably relied on the false representation. *Rice v. Sasse (In re Sasse)*, 438 B.R. 631, 644 (Bankr. W.D. Wis. 2010); *Vozella v. Basel-Johnson (In re Basel-Johnson)*, 366 B.R. 831, 834 (Bankr. N.D. Ill. 2007).

In considering the Plaintiffs' section 523(a)(2)(A) claim, the preclusive effect of the Judgment is very limited because of essential differences between a claim for misrepresentation or fraud under Minnesota law and the requirements of this dischargeability exception. To find a debt nondischargeable pursuant to section 523(a)(2), this Court must find that the Defendant obtained money from the Plaintiffs through a representation that was false or made with reckless disregard to the truth so as to constitute willful misrepresentation. It

11

must also conclude that Defendant had an actual intent to defraud and an intent that a materially false representation would be acted upon. The only element that is in question, based on the Judgment, is whether the Defendant had actual intent or a reckless disregard for the truth when the representation was made. This Court cannot conclude the Judgment contains such a finding because negligent misrepresentation is enough under Minnesota law to sustain a finding of fraud. *Schwartz v. Renville Farmers Co-op Credit Union (In re Schwartz)*, 44 B.R. 266, 268 (D. Minn. 1984).

Minnesota law does not require a finding of bad motive for a finding of fraud, and therefore fraud under Minnesota law is not automatically equivalent to a finding of fraud under section 523(a)(2)(A). *See In re Schwartz*, 44 B.R. at 268; *In re Carothers*, 22 B.R. at 120. The Judgment does not indicate whether the state court found an intentional fraud or a negligent misrepresentation fraud. The Judgment does not once use the word "intent" or any synonyms, or contain findings about the Defendant's mental state when she told the Plaintiffs that all three routes were paid for in full. Therefore, a genuine issue of material fact remains as to whether the Defendant intended to deceive the Plaintiffs. Accordingly, collateral estoppel does not support summary judgment for the Plaintiffs on the section 523(a)(2)(A) count with respect to the award of $20,000.00. Further, none of the findings in the Judgment establish any representation made regarding the retention and use of Company funds that would satisfy section 523(a)(2).

12

2.    Section 523(a)(4)

A debt incurred by "fraud or defalcation while acting in a fiduciary

capacity, embezzlement, or larceny" is nondischargeable pursuant to

section 523(a)(4). This section essentially contains two different exceptions —

one for fraud or defalcation while acting in a fiduciary capacity and another for

embezzlement or larceny while acting in any capacity. *Bullock v.*

*BankChampaign, N.A.*, 133 S. Ct. at 1760. The claims asserted under this

section relate to the refusal to purchase the Plaintiffs' shares under the

Buy/Sell Agreement and to the retention and use of corporate revenue by the

Defendant.

a.    Embezzlement

Embezzlement is the "fraudulent appropriation of property by a person to

whom such property has been entrusted or into whose hands it has lawfully

come." *In re Weber*, 892 F.2d 534, 538 (7th Cir. 1985) (quoting *Moore v. United*

*States*, 160 U.S. 268, 269, 16 S. Ct. 294, 40 L. Ed. 422 (1895)). To establish

embezzlement, the Plaintiffs must demonstrate "(1) the debtor appropriated

funds for his or her own benefit; and (2) the debtor did so with fraudulent

intent or deceit." *In re Weber*, 892 F.2d at 538. As with section 523(a)(2)(A),

"[e]mbezzlement, for purposes of 11 U.S.C. § 523 . . . 'requires fraud in fact,

involving moral turpitude or intentional wrong, rather than implied or

constructive fraud.'" *Bank Calumet v. Whiters (In re Whiters)*, 337 B.R. 326, 332

(Bankr. N.D. Ind. 2006) (citing *Driggs v. Black (In re Black)*, 787 F.2d 503, 507

13

(10th Cir.1986)). "It is knowledge that the use is devoid of authorization, scienter for short, . . . that makes the conversion fraudulent and thus embezzlement." *Sherman v. Potapov (In re Sherman)*, 603 F.3d 11, 13 (1st Cir. 2010). Larceny is proven if the debtor wrongfully and with fraudulent intent takes of property from its owner. *See In re Rose,* 934 F.2d 901, 903 (7th Cir. 1991).

Regarding the $80,000 tortious interference award for failure to purchase shares under the Buy/Sell Agreement, to succeed on a tortious interference with contract claim under Minnesota law, a plaintiff must show the existence of a contract, the alleged wrongdoer's knowledge of the contract, intentional procurement of the contract's breach, without justification, and damages caused by the breach. *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 362 (Minn. 1998). The Complaint alleges this claim is nondischargeable as embezzlement under section 523(a)(4). The facts necessary to prove tortious interference under Minnesota law are not the same as the elements necessary to prove embezzlement under the Code. Tortious interference does not require a defendant to have converted or appropriated funds. Further, the Judgment did not need to find that the Defendant acted with fraudulent intent or deceit. It only needed to find the Defendant intentionally procured the breach. Under Minnesota law, this requires a finding that a defendant acted "on purpose," not a finding that a defendant acted with a specific mental state. *See, e.g., Kallok v. Medtronic, Inc.*, 573 N.W.2d at 362. Accordingly, the Judgment does not

14

contain a finding the Defendant acted with fraudulent intent or deceit in

tortiously interfering, nor a finding that she appropriated the $80,000, and

therefore does not establish this award was debt for embezzlement under

section 523(a)(4).

However, the retention of the $200,487.00 constitutes embezzlement

within the meaning of section 523(a)(4). The first component of embezzlement

under section 523(a)(4), conversion, clearly occurred here. The Judgment

determined the Plaintiffs were entitled to certain revenue and the Defendant

withheld the revenue. Embezzlement requires knowledge that the use of funds

was unauthorized. Therefore, to find embezzlement, the Court, looking to the

totality of the circumstances, must determine whether the Defendant used

Marjac revenue in a way she knew was not authorized. *See In re Sherman*, 603

F.3d 11, 13 (1st Cir. 2010); *In re Rose*, 934 F.2d at 904. The Defendant's

conduct was clearly not based on a misunderstanding of her duties and

obligations. She was aware that the revenue generated by the routes was the

property of Marjac. She also was aware that revenue from the Plaintiffs' routes

was to be distributed to the Plaintiffs. She controlled the funds, commingled

them with funds from her other entities, and paid expenses for those entities

and for her third FedEx route rather than distribute them as agreed between

the parties. The use of the funds in such a manner was unauthorized.

Retaining all earnings, taking an unauthorized salary, and attempting to

conceal these actions by refusing to provide financial information are not

actions compatible with a mistake by the Defendant about the money to which

she was entitled. The facts essential to the Judgment for conversion are

sufficient to satisfy a claim of nondischargeability as embezzlement with

respect to the portion of the Judgment awarding $200,487.00 to the Plaintiffs.

> b.    Fraud or Defalcation While Acting in a Fiduciary
> Capacity

The alternate bases under section 523(a)(4), fraud or defalcation, require

the existence of a trust or fiduciary relationship between the parties at the time

the debt was created.[7] *Follett Higher Educ. Group, Inc. v. Berman (In re Berman)*,

629 F.3d 761, 765-66 (7th Cir. 2011). The determination of fiduciary capacity

for purposes of the bankruptcy code is a question of federal law. *O'Shea v.*

*Frain (In re Frain)*, 230 F.3d 1014, 1017 (7th Cir. 2000). The scope of a fiduciary

relationship under section 523(a)(4) is not as broad as the traditional state law

concept, and not everyone that state law defines as a fiduciary is necessarily

held to act in a "fiduciary capacity" for section 523(a)(4) purposes. *In re*

*Berman*, 629 F.3d at 767. Accordingly, the state court's determination that the

Defendant breached her "fiduciary duties and duties of loyalty" to the Plaintiffs

(and was a fiduciary under Minnesota law) is not dispositive for the purposes of

section 523(a)(4).

---

[7] For this reason, the Judgment's $20,000 award for fraud and misrepresentation regarding assets the Defendant contributed does not implicate this 523(a)(4) exception. The misrepresentation took place during the negotiations that ultimately led to the formation of the Company. The Defendant did not act in a fiduciary capacity before the parties formed the Company.

Traditionally, a section 523(a)(4) fiduciary relationship includes any relationship that involves the same high standard as a trust, such as "a lawyer-client relation, a director-shareholder relation, or a managing partner-limited partner relation" because all these relationships call for the principal to "repose a special confidence in the fiduciary." *In re Frain*, 230 F.3d at 1017 (citations omitted). More recently, courts have held that a fiduciary relationship exists for purposes of nondischargeability if "there is substantial inequality in power or knowledge in favor of the debtor seeking the discharge and against the creditor resisting discharge" and this "gives the former a position of ascendancy over the latter" because of the special confidence the principal reposes in the fiduciary. *In re Frain*, 230 F.3d at 1017; *In re Woldman*, 92 F.3d 546, 547 (7th Cir. 1996). Fiduciary obligations between equals, such as general partners in a partnership or joint venturers, generally do not qualify. *In re Woldman*, 92 F.3d at 547.

If a defendant is found to have acted in a fiduciary capacity, the next question is whether his or her conduct constituted fraud or defalcation. "Fraud" generally is interpreted as involving "intentional deceit." 4 COLLIER 523.10[1][a] at 523-71. Defalcation may refer to nonfraudulent breaches of fiduciary duty. *Bullock v. BankChampaign, N.A.*, 133 S. Ct. at 1760. The Supreme Court states the term covers

> [R]eckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his

conduct will turn out to violate a fiduciary duty. . . . That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation."

*Id.* at 1759-60 (quoting the Model Penal Code).

To determine whether the Defendant's "fiduciary duties and duties of loyalty" under Minnesota law constitute a "fiduciary duty" under section 523(a)(4), the Court must look to Minnesota law. Under Minnesota law, majority or controlling shareholders of a closely-held corporation owe a fiduciary duty to the other shareholders. *Advanced Commc'n Design, Inc. v. Follett*, 615 N.W.2d 285, 293 (Minn. 2000). "[C]o-owners in a closely-held corporation owe each other 'the highest standard of integrity and good faith in their dealings with each other.'" *U.S. Bank N.A. v. Cold Spring Granite Co.*, 802 N.W.2d 363, 381 (Minn. 2011), quoting *Fewell v. Tappan*, 223 Minn. 483, 27 N.W.2d 648, 654 (1947), and citing *PJ Acquisition Corp. v. Skoglund*, 453 N.W.2d 1, 19 (Minn. 1990) (stating that Minn. Stat. § 302A.751, subd. 3a (1998) recognizes fiduciary obligations of shareholders of closely-held corporations) (Yetka, J., dissenting). However, beyond this articulation, the Minnesota Supreme Court has "not defined what this standard entails." *U.S. Bank N.A. v. Cold Spring Granite Co.*, 802 N.W.2d at 381 (declining to determine content of common law fiduciary duties of majority shareholder of closely-held corporation because shareholders failed to demonstrate a breach even under standard they advocated).

18

In *Advanced Communication Design,* the Minnesota Supreme Court recognized the role that control plays in a determination of whether a shareholder of a closely-held corporation owes fiduciary duties under Minnesota law. *See* 615 N.W.2d at 294 (finding non-director holding non-voting shares did not owe fiduciary duty, as "clearly any significant ability to control corporate decision-making is lacking"). Following this line of reasoning, implicit in the state court's finding that the Defendant owed a fiduciary duty and breached it was a determination that she had something approaching a "significant ability to control corporate decision-making." Therefore, whatever the Defendant's precise duties were under Minnesota law, the relationship was analogous to the director-shareholder and managing partner-limited partner relationships that call for the principal to "repose a special confidence in the fiduciary" and create a fiduciary relationship under section 523(a)(4). *See In re Frain*, 230 F.3d at 1017.

An independent examination of the Judgment substantiates the conclusion that the Defendant and the Plaintiffs stood in a relationship where there was substantial inequality of power in favor of the Defendant giving her a position of ascendancy over the Plaintiffs. The Defendant owned 57% of Marjac shares and thus was a majority shareholder. She was the CEO and the Secretary/Treasurer of the Company. She also was able to fire Plaintiff Mr. Kriescher and was able to deny him access to the FedEx package facility. She apparently had sole control over the financial information. She was in a

19

position where she could "rebuff" the Plaintiffs' attempts to obtain the

information, similar to the Defendant in *Catrambone v. Adams* who "could not

even access basic information about day-to-day business activities-much less

financial records" and "retained 'sole access' to the computer with financial

information about the business." 498 B.R. 839, 848 (N.D. Ill. 2013). The

Plaintiffs here, like the plaintiff in that case, are in a less powerful position

than the minority shareholders in *Frain* who enjoyed at least "reasonably

similar access" to information. *Catrambone v. Adams*, 498 B.R. at 848.

In addition to demonstrating the Defendant was a fiduciary within the

meaning of section 523(a)(4), findings from the Judgment also establish

defalcation with respect to funds retained, commingled, and expended by the

Defendant. The situation here is similar to *Universal Restoration Servs. v.*

*Hartung (In re Hartung)*, Chapter 13 Case No. 12-21920, Adv. No. 12-2359,

2014 WL 201100 (Bankr. E.D. Wis. Jan. 17, 2014), *aff'd*, 511 B.R. 538 (E.D.

Wis. 2014). In a previous state court proceeding, the jury held there was no

valid reason for the defendants not to have paid the plaintiff funds received

from an insurance company for repairs to their house. The defendants knew

the funds were to pay for repairs, yet they chose the option of using the funds

for personal reasons. The bankruptcy court determined on summary judgment

that the findings demonstrated the defendants took the money deliberately and

without justification. The court found this was a gross deviation from the

standard of care that a law-abiding person would observe, and excepted the

20

debt from discharge as debt for defalcation in a fiduciary capacity under section 523(a)(4).

The parties in the instant case agreed to form Marjac and that each party would receive the revenue from their respective routes. Initially, the parties operated the Company this way, and the Plaintiffs were paid in 2011. The agreement did not contemplate Defendant taking a salary, or retaining all earnings, yet she eventually did both of these things. In addition, she diverted Company funds to her other companies. This constitutes a gross deviation from the standard of care a law-abiding person would observe. Thus, the defalcation in a fiduciary capacity exception contained within section 523(a)(4) provides an alternate ground to determine that the claim for funds retained and used by the Defendant is nondischargeable.

The portion of the Judgment related to the failure to complete the Buy/Sell Agreement, however, does not satisfy the requirements for summary judgment under this section 523(a)(4) exception. The state court found that the Defendant "refused to allow the purchase of Thomas Kriescher's shares by Marjac to go forward." The Court cannot infer much from this statement. How did she "refuse to allow" the purchase? Were there sufficient funds available to fund the purchase? As Secretary/Treasurer, did she simply refuse to pay the Plaintiffs and execute documentation? Without a clearer understanding of the parties' rights and the facts in existence at the time of the obligation to repurchase, it is impossible to say whether the Defendant committed

21

defalcation within the meaning of section 523(a)(4) in failing to allow the purchase to go forward.

The Judgment includes the conclusion of law, "Gibson committed fraud against the Krieschers while acting in a fiduciary capacity when she refused to allow for the operation of the Buy/Sell Agreement and retained the earnings and value of the Krieschers' two routes . . . ." It is not possible to determine from the Judgment whether the failure to fund the Buy/Sell Agreement was intentional or to apply factual findings from the Judgment in a way sufficient to support collateral estoppel with respect to this claim as either an embezzlement or a fraud or defalcation. Therefore, with respect to the $80,000 award, the Judgment does not establish the intent necessary for fraud or defalcation in a fiduciary capacity. Nor does the Judgment's finding of tortious interference establish the Defendant appropriated the money with the intent requisite to meet the requirements for embezzlement under section 523(a)(4), and summary judgment is denied on that claim.

3.   Section 523(a)(6)

Finally, a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is also nondischargeable. 11 U.S.C. § 523(a)(6). The Seventh Circuit Court of Appeals notes, "courts are all over the lot in defining" willful and malicious in section 523(a)(6), but the different definitions "probably don't generate different outcomes." *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 322-23 (7th Cir. 2012). Generally, a willful and

22

malicious injury "is one that the injurer inflicted knowing he had no legal

justification and either desiring to inflict the injury or knowing it was highly

likely to result from his act." *Id.* at 324. "[T]he (a)(6) formulation triggers in the

lawyer's mind the category 'intentional torts,' as distinguished from negligent or

reckless torts. Intentional torts generally require that the actor intend 'the

consequences of an act,' not simply 'the act itself.'" *Kawaauhau v. Geiger*, 523

U.S. 57, 61-62 (1998). Injuries that are recklessly or negligently inflicted do not

fall within the scope of the statute. *Shriners Hosp. for Children v. Bauman (In re

Bauman)*, 461 B.R. 34, 49 (Bankr. N.D. Ill. 2011); *see Kawaauhau v. Geiger*,

523 U.S. at 64.

Conduct must be intentional to satisfy a claim of nondischargeability

under section 523(a)(6), similar to the requirement under section 523(a)(2)(A).

The Plaintiffs devote a great deal of the adversary complaint, the Motion, and

their briefs to acts taken or omitted by the Defendant in the conduct and

defense of the state court action. Those acts and failures certainly influenced

the state court as evidenced by the fact that a significant portion of the

Judgment is devoted to the Defendant's conduct in the litigation rather than to

identifying specific facts related to the conduct associated with the claims that

were the subject of the state court complaint. Those facts, however, have no

bearing on whether the debt related to the Buy/Sell Agreement is

nondischargeable. Neither are there any findings in the Judgment that were

essential to this award that demonstrate a finding the Defendant's conduct in

23

refusing to allow the Buy/Sell Agreement to go forward was intentional as

523(a)(6) requires, and, accordingly, summary judgment with regard to that

claim must be denied.

The final claims asserted as nondischargeable under section 523(a)(6)

relate to costs and attorney's fees awarded in the Judgment as sanctions.[8] To

impose sanctions under Rule 37.01(d) of the Minnesota Rules of Civil

Procedure, all the court needed to find was that the Defendant failed to make a

required disclosure. *See* Minn. R. Civ. P. 37.01:

> If the motion [to compel disclosure or a discovery response] is
> granted, or if the requested discovery is provided after the motion
> was filed, the court shall, after affording an opportunity to be
> heard, require the party or deponent whose conduct necessitated
> the motion or the party or attorney advising such conduct or both
> of them to pay to the moving party the reasonable expenses
> incurred in making the motion, including attorney fees . . . .

The Judgment did not conclude the Defendant engaged in any act satisfying

the requirements of section 523(a)(6) in connection with the sanctions and fees,

nor did it need to find anything about the Defendant's state of mind when it

awarded the sanctions.

The Judgment also stated it "finds that Gibson's course of conduct has

been designed to delay proceedings" and the delay "has resulted in significant

financial harm to Plaintiffs due to the loss of their primary livelihood." Even if

these comments informed the judge's award of sanctions, and even if the Court

---

[8] The Plaintiffs assert the $200,487.00 in damages for retention of revenue is nondischargeable under section 523(a)(6). The Court need not reach this issue as it has already determined the $200,487.00 is excepted from discharge under section 523(a)(4).

were to look beyond the Judgment and consider them, they still do not demonstrate that the Defendant's conduct was malicious. It may have been willful in that she intended to delay the proceedings, but the comments do not demonstrate that the Judgment based the award on a finding that the Defendant acted maliciously, intending harmful consequences, or in conscious disregard of her duties.

Therefore, the facts necessary to the sanctions award do not satisfy section 523(a)(6) elements, and issues of material fact exist as to the Defendant's intent at the relevant points during the litigation.

## V.   Conclusion

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: November 6, 2014

BY THE COURT:

_____

Hon. Catherine J. Furay
U.S. Bankruptcy Judge