UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: | Case Number: 13-15635-7 |
| MAJORIE ELLEN GIBSON, | |
| Debtor. | |
| THOMAS KRIESCHER, VICKY KRIESCHER, and MARJAC, INC., | |
| Plaintiffs, | Adversary Number: 14-34 |
| v. | |
| MAJORIE ELLEN GIBSON, | |
| Defendant. | |

## **DECISION**

This matter is before the Court on the Motion of the Defendant, Marjorie Gibson, to vacate the November 6, 2014, Order granting partial summary judgment and to alter or amend the findings of fact, conclusions of law and judgment. For the following reasons, the Motion is denied.

### **JURISDICTION**

The Court has jurisdiction to resolve this matter under 28 U.S.C. § 1334. It is a core proceeding under 28 U.S.C. § 157(b)(2)(1).

**FACTS**

The facts are clear. The Defendant owned two Federal Express routes. She purchased a third route. She did not have the funds to pay the purchase price in full, so she financed the third route. Experiencing a problem with her relationship with FedEx, she entered into an agreement with a Mr. Bauerly for him to be the named contractor with FedEx. J&M and Marjohn were formed in connection with these business changes. Ms. Gibson was the majority owner of each company.

In 2010, FedEx announced a change in policy requiring every franchisee to own at least three routes operating out of the same facility. The change created an obstacle to the continued business of the Plaintiffs as they only had two routes operating from the same facility. The Plaintiffs and the Defendant discussed combining their respective routes. In late 2010, they reached an agreement and Marjac was formed. The Plaintiffs' two routes and the three routes held by J&M/Marjohn were contributed to the new entity, Marjac. The parties agreed that the driver payroll, which was netted out by FedEx, would continue to be paid from the gross FedEx revenue. The net revenue remitted by FedEx would be split between the parties with the net from the two routes previously owned by the Plaintiffs distributed to them, and the net from the other three routes distributed to Ms. Gibson and Mr. Bauerly.

Gibson acted as both the President and Treasurer of Marjac. She controlled the bank accounts and all accounting. Initially, the net payments from FedEx were deposited into J&M. Delays by FedEx caused a delay in

changing the recipient of the payments from J&M to Marjac. The funds received by J&M were transferred by Gibson to Marjohn, *not* Marjac as they should have been. It was from the Marjohn account that Gibson made disbursements.

In November and December 2010, Gibson allocated and paid out the net revenues as agreed. In January 2011, distributions to the Plaintiffs became sporadic. The erratic nature of the payments to the Plaintiffs increased until March 2011, when Gibson ceased making distributions.

At no time did Gibson separate the revenues generated by J&M and Marjohn from the Marjac revenues. Nor did she separate the net revenues attributable to the Plaintiffs' routes from the net revenues attributable to her routes. She used these commingled funds to make payments on the route she was purchasing, to pay herself a salary, and to pay other expenses attributable to her businesses.

## DISCUSSION

A. <u>Timeliness of Motion</u>

First, the Court must address whether the Defendant timely filed the motion to reconsider. Under Fed. R. Civ. P. 52(b), a court may amend its findings upon a party's motion if that motion was filed no later than 28 days after the entry of judgment. Rule 52 applies in adversary proceedings, except that a motion must be filed within 14 days after the entry of judgment. Fed. R. Bankr. P. 7052. "Judgment" as used in the Federal Rules of Civil Procedure includes "any order from which an appeal lies." Fed. R. Civ. P. 54(a).

3

Generally, a judgment entered as to fewer than all claims or all parties in a lawsuit is not immediately appealable. A party normally must wait for the entry of judgment disposing of all claims and parties to appeal. However, Fed. R. Civ. P. 54 allows a court to make such a judgment "final" so as to make it immediately appealable. To do so, a court must both direct the entry of judgment and make an express determination that there is no just reason for delay. Fed. R. Civ. P. 54(b); *HBE Leasing Corp. v. Frank,* 48 F.3d 623, 631 (2d Cir. 1995). If an order does not give birth to an immediate appeal, then it does not meet the definition of "judgment" under the Federal Rules, and would not begin to toll the time limit under Rule 52(b).

Any other order that adjudicates fewer than all of the claims is not final and may be revised at any time before the entry of a judgment adjudicating all of the claims. Fed. R. Civ. P. 54(b); *see Pandrol USA, LP v. Airboss Ry. Prods.,* 320 F.3d 1354, 1362–63 (Fed. Cir. 2003) (noting that "whether an order constitutes a final judgment 'depends upon whether the judge has or has not clearly declared his intention in this respect in his opinion'"). "A grant of partial summary judgment that does not dispose of all parties and all claims is generally not immediately appealable unless the district court issues a Fed. R. Civ. P. 54(b) certificate." *Bonner v. Perry*, 564 F.3d 424, 427 (6th Cir. 2009). Partial summary judgment will become a final judgment only when the court disposes of all remaining claims and parties. *Porter v. Williams,* 436 F.3d 917, 920 (8th Cir. 2006).

The Court awarded partial summary judgment to the Plaintiffs on November 6, 2014, reserving the rest of the claims for trial. The Court entered an order dismissing the remaining claims on August 18, 2015. The Court did not make a determination in the November 6 Order that there was no just reason for delay, nor did it issue a 54(b) certificate. Without such a determination, the November 6 Order did not become immediately appealable. Further, the Court expressed its intention that the litigation would continue and proceed to trial by denying summary judgment on the other claims. Therefore, the time limit in Fed. R. Civ. P. 52(b) did not begin to run until judgment was entered on all claims on August 18, 2015. The Defendant timely filed this motion on August 31, 2015.

  B. Motion to Alter or Amend

Next, the Court must determine whether to vacate the prior order of summary judgment. The Defendant makes several arguments in favor of vacation, none of which are persuasive.

Neither at the time of the motion for summary judgment nor at trial was there ever any genuine dispute regarding the facts. Rather, Gibson now suggests that because FedEx delayed changing the payee on its remittances from J&M to Marjac, the commingling is excused. Even if, as an initial matter, that explanation is considered, it does not obviate the fact that Gibson didn't transfer the funds from J&M to a Marjac account and, instead, put them into Marjohn. It doesn't circumvent the fact she knew the funds included money properly payable to the Plaintiffs or that she used those funds to pay for the

5

purchase of her third route, salary for herself, and other expenses of her businesses. While holding a directors meeting at which she was the only attendee and voting to pay herself a salary may not have violated the bylaws, authorizing a salary and actually making payments on that salary from the commingled funds are not the same thing. The Defendant may have had the legal right to award herself a salary, but she did not have the right to pay that salary from the funds she was supposed to be distributing to the Plaintiffs. These uses of the funds by Gibson occurred at the same time she ceased making payments to the Plaintiffs, arguing they shouldn't be paid since they were not employees and didn't come to work. This is a capricious basis for cessation of payments.

      The Defendant also suggests relief from the order is appropriate because the Court should infer that Gibson had some reasonable justification for retaining earnings, withholding payments, and, by extension, for using the funds for her own benefit. She suggests that *if* the Plaintiffs had been previously overcompensated, *then* it would have been appropriate to retain or withhold net revenue from the Plaintiffs. The flaw with this argument is that it is mere speculation. An inference must be supported by some factual basis. The Defendant did not present any evidence supporting this conjecture either at the time of the summary judgment motion or at trial. Thus, it falls into the realm of "if wishes were horses." Further, if a moving party has carried its burden to support an award of summary judgment, the other party must offer more in opposition than "some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The issue of fact must be genuine and material. *Id.* The mere speculation offered by the Defendant is not a genuine issue of material fact.

Finally, the Defendant argues that because other evidence might have been presented at trial or the Court could infer from the evidence presented that there may be other facts that could have been presented and other inferences that could be drawn, there should be relief from the summary judgment order. In the Defendant's estimation, one or more elements of embezzlement were not established clearly in the state court findings and breach of fiduciary duty is insufficient to find defalcation.

The state court entered a judgment in favor of the Plaintiffs on October 3, 2013 (the "Judgment"). Included was a money judgment for conversion and breach of fiduciary duties in the amount of $200,487.00. It was this portion of the Judgment that was the subject of the partial summary judgment held nondischargeable under section 523(a)(4) by this Court.

As fully set forth in this Court's summary judgment decision, state court judgments are given the same preclusive effect that the judgments otherwise have in state court. Under Minnesota law, collateral estoppel is available when: (1) the issues are identical to those in a prior adjudication, (2) there was a final judgment on the merits, (3) the estopped party was a party or in privity with a party in the previous action, and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issues. Issues essential to a court's decision in a previous action cannot be relitigated. Consequently, the

question on summary judgment was whether the Plaintiffs satisfied all four collateral estoppel elements on the breach of fiduciary duty/conversion claim.

The parties in the two proceedings are the same. The Judgment was a final judgment. Under Minnesota law, the defendant had a full and fair opportunity to be heard on the adjudicated issues. Therefore, the sole issue on summary judgment was whether the state court decided issues essential to its Judgment that would lead to a finding of nondischargeability under 11 U.S.C. § 523(a)(4).

The Defendant retained $200,487.00 in revenue attributable to the Plaintiffs' routes that was to be distributed to the Plaintiffs under the parties' agreement. This was a conversion that satisfies the first element of embezzlement under section 523(a)(4). The Judgment determined the Plaintiffs were entitled to certain revenue and the Defendant withheld that revenue. Embezzlement requires knowledge that the use of funds was unauthorized. The evidence presented on summary judgment established the Defendant used Marjac revenue in a way she knew was not authorized. *See Sherman v. Potapov (In re Sherman),* 603 F.3d 11, 13 (1st Cir. 2010); *In re Rose*, 934 F.2d 901, 904 (7th Cir. 1991). There was no evidence her conduct was based on a misunderstanding of her duties and obligations. She was aware the revenue generated by the routes was the property of Marjac. She also was aware the revenue from the Plaintiffs' routes was to be distributed to the Plaintiffs. She controlled the funds, commingled them with funds from her other entities, and paid expenses for those entities and for her third FedEx route rather than

distribute them as agreed between the parties. The use of the funds in such a manner was unauthorized. It is also clear from the state court findings (re-confirmed by the evidence at trial) that the funds were used for Defendant's benefit. The facts essential to the judgment for conversion are sufficient to satisfy a claim of nondischargeability as embezzlement with respect to that claim.

An independent examination of the Judgment substantiated the conclusion the Defendant and the Plaintiffs stood in a relationship where there was a substantial inequality of power in favor of the Defendant, giving her a position of ascendancy over the Plaintiffs. In addition to demonstrating the Defendant was a fiduciary within the meaning of section 523(a)(4), findings from the Judgment also established defalcation with respect to the funds retained, commingled, and expended by the Defendant. *See Universal Restoration Servs. v. Hartung (In re Hartung)*, Chapter 13 Case No. 12-21920, Adv. No. 12-2359, 2014 WL 201100 (Bankr. E.D. Wis. Jan. 17, 2014), *aff'd*, 511 B.R. 538 (E.D. Wis. 2014).

The Judgment confirms the Plaintiffs and the Defendant agreed to form Marjac and that each party would receive the revenue from their respective routes. Initially, the Company operated this way. The Defendant then unilaterally stopped distributions to the Plaintiffs. She continued to commingle the revenues attributable to the Plaintiffs' routes with revenues from her routes and other businesses. Finally, the Judgment and affidavits supporting summary judgment in this case confirm Gibson used the funds for her own

9

benefit and that of her other companies. These facts were undisputed in the summary judgment proceeding. This constitutes a gross deviation from the standard of care a law-abiding person would observe. Thus, the defalcation in a fiduciary capacity exception contained within section 523(a)(4) provided an alternate ground for the determination of nondischargeability. The summary judgment decision clearly articulated that the Plaintiffs satisfied both of these exceptions to discharge under 523(a)(4).

The final argument offered in support of relief is the suggestion that because the summary judgment proceeding did not dispose of all of the claims but, instead, there remained separate components of the Judgment and claims in the adversary that were tried, it is possible to set aside the summary judgment order. In effect, the Defendant posits that because evidence presented at trial *might* give rise to *possible* inferences that there could have been defenses to the breach of fiduciary duty claims, the summary judgment should be vacated. The fact that, in retrospect, Gibson's counsel now believes that other "plausible inferences" might be drawn from trial evidence does not support vacation of the summary judgment. If there were facts or evidence supporting opposition to the summary judgment, they should have been presented. They were not.

A Rule 52(b) motion to alter or amend findings is not to be used to relitigate questions that have already been answered, or to raise an argument that could have been made before. *SHF Holdings, LLC v. Allamakee County (In re Agriprocessors, Inc.),* 474 B.R. 896, 899-900 (Bankr. N.D. Iowa 2012). A

motion to amend should not be "employed to introduce evidence that was available at trial but was not proffered." *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986). Rule 52(b) is not intended to relitigate old issues, but rather to correct a manifest error of law or fact, consider new evidence, or consider a change in the law. *Sybron Transition Corp. v. Security Ins. Co.*, 158 F. Supp. 2d 906, 908 (E.D. Wis. 2000). If the Defendant had any facts or evidence that would have supported her arguments prior to the award of partial summary judgment, they should have been raised at that time. No such facts or evidence were presented.

For the foregoing reasons, the Defendant's Motion to Alter or Amend Findings of Fact, Conclusions of Law and Judgment is denied.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: November 3, 2015.

BY THE COURT:

Hon. Catherine J. Furay
U.S. Bankruptcy Judge